# Richmond

## J. J. LEWIS v. C. H. LEWIS.

### November 17, 1932.

Present, Campbell, C. J., and Holt, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*W. H. Colhoun* and *M. G. McClung,* for the appellant.

*R. S. Kime* and *F. B. Whitescarver,* for the appellee.

BROWNING, J., delivered the opinion of the court.

J. J. Lewis carried insurance on his life in the Shenandoah Life Insurance Company of Roanoke, Va. The policy was taken out by him on the 25th day of July, 1919. It was for the sum of $2,500.00, and his wife, Lucy Lewis,

was the beneficiary named in the policy. For a number of years J. J. Lewis had been engaged in the coal and building material business in Salem, Va., trading under the firm name of J. J. Lewis & Company.

In 1921, he associated with him as partners in this business his two sons, C. H. Lewis and J. T. Lewis, giving to each of them a one-third interest in the profits derived from the business and changing the firm name to J. J. Lewis & Sons. At this time C. H. Lewis had not reached his majority. The sons invested no capital in the business, the only consideration flowing from them was their engagement to put into it their personal efforts and work.

About two years after this it appears that bad feeling was engendered among them which culminated in an estrangement between the sons and their father. The latter then went to Washington, D. C., with his wife, where he owned some property and where he engaged in business but he returned at intervals to his home at Salem. The evidence shows that he retained his interest in the business of J. J. Lewis & Sons until February 27, 1929, upon which date he conveyed to his sons, J. T. and C. H. Lewis, among other property, "any right, title or interest he may have in law or in equity in and to that certain coal and building material business now being operated by the said C. H. Lewis and J. T. Lewis on Union street, in the town of Salem, Roanoke county, Virginia, and formerly known as 'J. J. Lewis & Sons.' In this connection it is the intention of the said J. J. Lewis, as is evidenced by his executing this deed and agreement to convey unto the said J. T. Lewis and C. H. Lewis all of his interest in the personal property constituting and forming the tangible assets of what was formerly known as the firm of J. J. Lewis & Sons, as well as to convey unto them his interest in the intangible assets and to release any right or claim he might have to demand or require an accounting from them in connection with the operation of the business of the said J. J. Lewis & Sons; said J. T. and C. H. Lewis hereby agreeing to assume and

pay off all obligations due from said business to the exoneration of said J. J. Lewis."

It was in evidence that in the year 1925, J. T. Lewis and C. H. Lewis filed a certificate of partnership in the clerk's office of the Circuit Court of Roanoke county, in which it was stated that the partnership was composed of J. T. Lewis and C. H. Lewis. The latter testified that this was done without notifying J. J. Lewis and that he did not know of it until the settlement was made in February, 1929, and that its purpose was to protect the business from the possible effect and result of a suit which had been instituted in Washington, D. C., against J. J. Lewis.

J. J. Lewis testified that when he went to Washington he left the insurance policy, referred to, among his papers either at his office or at his home from whence it was taken by his sons and locked up at the Farmer's National Bank of Salem. In the meantime J. T. Lewis died, testate, leaving C. H. Lewis his sole devisee and legatee, and C. H. Lewis declined to deliver the policy to his father, J. J. Lewis. The latter, in October, 1930, instituted an action in detinue to recover the policy, which action was enjoined by the court at the instance of C. H. Lewis who filed his bill in chancery for that and the additional purpose of asserting an equitable lien on the policy, or its proceeds, on account of the alleged payment by him of five premiums on the policy which kept it in force and effect. C. H. Lewis testified that these premiums were paid by himself and his brother, J. T. Lewis, but on cross-examination he was asked the following questions:

"Q. And when that firm of Lewis Brothers was organized in 1929 all these five premiums that you now claim had been paid to the Shenandoah Life Insurance Company by the firm of J .J. Lewis & Sons. Is that correct?

"A. All debts were paid out of the firm.

"Q. I will ask you if the five premiums had been paid?

"A. Yes, sir."

It will be noted that there was filed with the answer of J. J. Lewis, to the bill of C. H. Lewis, a statement dated January 11, 1929, designated as Exhibit No. 2, "showing money withdrawn by J. J. Lewis from funds of J. J. Lewis & Sons, and money paid on his account." Among a long list of items constituting this statement there appear five payments to the insurance company of $123.33 each for the years 1924, 1925, 1926, 1927 and 1928, which correspond to the payments and their dates stated in the bill of C. H. Lewis as having been made by himself and his brother. All of these items were charged to the account of J. J. Lewis as shown by the statement. C. H. Lewis admitted that after his father went to Washington he sent money to his wife, a part of which was used by her, and part used by the firm in the business.

Mrs. Lucy Lewis, the wife of J. J. Lewis and the beneficiary in the policy, died on the 31st day of December, 1928.

The lower court, in the chancery suit referred to, entered a decree of reference on January 14, 1931, referring the cause to a master commissioner, who reported that C. H. Lewis was entitled to the proceeds of the policy of insurance to the extent of the five premiums referred to as having been paid by himself and his brother by virtue of an equitable lien thereon and that he was entitled to its possession until this was satisfied and that J. J. Lewis was the owner of the legal title to the policy subject to the said lien right of C. H. Lewis. Exceptions to this report were filed by J. J. Lewis. The court confirmed the report by its decree of September 11, 1931, and from this decree an appeal was allowed.

The evidence before the commissioner included the testimony of C. H. Lewis and J. J. Lewis, the deed of conveyance, or deed of settlement, which was filed as an exhibit with the answer of J. J. Lewis to the bill in chancery, the cancelled checks denoting the payment of the premiums and two statements of account, one designated "C. H.

Lewis—Exhibit No. 2," already referred to, and the other filed with the said answer.

In our opinion the evidence shows that the premiums were paid out of the interest of J. J. Lewis in the business of J. J. Lewis & Sons and were charged to him. Both of the statements show this as to the premiums falling due in 1924, 1925 and 1926. The statement filed with the deposition of C. H. Lewis shows this as to all of the premiums alleged to have been paid by J. T. Lewis and C. H. Lewis. J. J. Lewis never parted with his interest in the business until he executed the deed of February 11, 1929, by which he conveyed it away to his two sons. The testimony of both of the witnesses, parties hereto, abundantly shows this. Having reached this conclusion—inescapable we think—the case is quite effectually disposed of. It is therefore unnecessary to consider the questions of equitable lien or estoppel as neither are present.

The effect of our holding is that the insurance policy in question is the property of J. J. Lewis and that the decree complained of is erroneous. We remand the case to the lower court with the direction that an appropriate decree be entered effecting the views herein expressed.

*Reversed and remanded.*